SAMUEL SPRIGG, APPELLANT, vs. THE BANK OF MOUNT PLEASANT, APPELLEE.

The principles decided in the case of Sprigg vs. The Bank of Mount Pleasant, reported in 10 Peters, 257, examined and affirmed.

It is equally well settled in Courts of Equity, as well as in Courts of law, as a rule of evidence, that parol evidence is inadmissible to contradict, or substantially vary the legal import of a written agreement. And this is founded on the soundest principles of reason and policy, as well as authority. The case of Hunt vs. Rousmanier, 8 Wheat. 211, cited.

Extending the time of payment of a bond, and a mere delay in enforcing it, will not discharge a surety; unless some agreement has been made injurious to the interest of the surety.

It is a sound and well settled principle of law, that sureties are not to be made liable beyond their contract; and any agreement with the creditor, which varies essentially the terms of the contract, without the assent of the surety, will discharge him from responsibility. But this principle cannot apply where the surety has by his own act exchanged his character of surety, for that of principal; and then applies to a Court of Equity to reinstate him to his character of surety, in violation of his own express contract.

Courts of Equity will permit independent agreements which go to show a deed on its face absolute, was intended only as a mortgage, to be set up against the express terms of the deed, only on the ground of fraud. Considering it a fraudulent attempt in the mortgagee, contrary to his own express agreement, to convert a mortgage into an absolute deed. And it is equally a fraud on the part of a debtor, to attempt to convert his contract as principal, into that of a surety only.

ON appeal from the Circuit Court of the United States for the District of Ohio.

This case was brought before the Court at January term, 1836, on a writ of error, prosecuted by the present appellant, seeking to reverse the judgment of the Circuit Court in an action instituted against him on a joint and several bond, under seal, made by him and others, to the Bank of Mount Pleasant, for the payment of a sum of money stated in the bond, to the bank, upon which obligation the bank had loaned the sum of twenty-one hundred dollars, and had paid the same to Peter Yarnall and Company, one of the co-joint, and several obligors. The bank, after the loan, had continued to renew it for some years; the discount and interest on the same having been paid to the bank every sixty days; until, when Peter Yarnall and Company, having been insolvent, suit was brought on the obligation, against Samuel Sprigg, and a judgment obtained against him for the amount of the obligation.

The object of the writ of error was to have the judgment of the Circuit Court reversed, on the ground that the indulgence for the payment of the debt had been given to Peter Yarnall and Company, without the privity or knowledge of the plaintiff in error; that he was only a surety in the obligation, which was, he alleged, known to the bank; and he was discharged from the liability

26.

for the debt to the bank. These allegations were denied by the Bank of Mount Pleasant.

The Court in that case held that all were principals in the obligation, and were equally and fully bound to the payment of the debt; and the continuation of the loan on the bond, whether the same was to one or all the obligors did not impair the claim of the bank to recover from all and each of them. The judgment of the Circuit Court of Ohio was affirmed. 10 Peters, 257.

In December 1838, the appellant in this case, Samuel Sprigg, filed a bill in the Circuit Court of Ohio, praying to have the judgment which had been affirmed in the Supreme Court, perpetually enjoined; on the ground that all the parties to the bond held by the bank, except Peter Yarnall and Company, were sureties for the loan made on the bond; and that the bank, on the maturity of the bond, having re-discounted it from time to time, at the request of Yarnall and Company, without the consent of the sureties, they, the complainant being one, were discharged.

The Circuit Court, after the testimony of many witnesses had been taken, and a full hearing, refused the injunction; and ordered the bill to be dismissed: and from this decree the complainant prosecuted this appeal.

The counsel for the appellant contended, that his case is made out as stated in the bill, and referred the Court to the depositions, and particularly to the letters of Yarnall to the bank, and the account of the bank with Yarnall and Company, taken from the bank books. He contended, that there is no estoppel in equity, especially as a rule of evidence, though there may be some cases in its popular sense, as a broad rule of right.

He contended, that though the sureties made themselves principals to pay in sixty days, yet they are not principals without their consent, as long as the bank might choose to renew the loan.

He contended, that if he has made a case which would entitle him to relief, supposing the words "as principals" were not in the obligation, that then he is entitled to the relief he seeks, notwithstanding the insertion of these words, "as principals." He contended, that the existence of the words "as principals," in the bond, does not deprive him of that equity which the like conduct of the bank would give him in the common case of a joint and several obligation. The plaintiff also contended, that to so give time and enter into new agreements, without the surety's assent, is, though none may have been intended, a fraud upon him, notwithstanding the insertion of the words "as principals," when the bank knew that the discount was for the sole benefit of Yarnall and Company.

He further insisted, that the insertion of the words "as principals," when the bank knew the true relations of the parties, did not give the bank the right to renew the loan, to make new agreements, or to give further day of payment at its pleasure, without the assent of the sureties. That if the defendants intended to gain such a

[Sprigg vs. The Bank of Mount Pleasant.]

power or advantage, fair dealing required them to ask or demand it from the sureties in a plain way, as by a direct insertion of such a power in the obligation. a practice which this same bank has long since adopted. And that the decree of the Court below ought to be reversed, and one entered, perpetuating the injunction, with costs.

The counsel for the appellee contended, that the appellant, having acknowledged himself in the bond to be a principal debtor, is estopped from alleging that he is only a surety, as between him and the appellee. Also, that the testimony excepted to is entirely inadmissible, so far as it is sought by the same to contradict, &c., the bond; there being no allegation in the bill, or proof, that there was any fraud, surprise, or mistake, in the making or executing the same. Also, that the appellant, upon his own showing, admitting all in his bill stated to be true, is not entitled to the relief prayed for. And that, as the appellant was accustomed to transact business with the bank, and as the payment of the bond was deferred according to her usages, he is bound by those usages; such usages, under such circumstances, forming a part of the bond or contract.

Also, that the appellant has legally and equitably waived all his rights as surety, if he were such, by acknowledging himself to be a principal debtor, and so contracting with the bank; and has thereby at least authorized the bank to treat him according to the character voluntarily assumed by him, until such time as he might give notice that he was but a surety, and require the bank to prosecute the collection of the bond. And that the Court ought not to permit the appellant to disclaim the character of a principal debtor, and thereby violate his contract and good faith, and thus perpetrate a fraud upon the appellee. And that the appellant has failed, even if the testimony is admissible, to sustain by proof the material allegations of his bill.

The appellee also contended, that the bank is entitled to a decree, and that decree should include, if the injunction in this case should be dissolved, damages, according to the statutes of Ohio, which may be recognised as rules, &c., by this Court; and which require the Courts of that state, on the dissolution of an injunction to stay the collection of money, to render a decree for ten per cent. damages on the amount due, in favour of the defendants: and if an appeal should be taken to a superior Court, and the injunction there dissolved, that court is required to render a decree for fifteen per cent. damages.

The case was submitted to the Court, on printed arguments, by Mr. Jacob and Mr. Webster, for the appellant; and by Mr. Alexander, for the appellee.

Mr. Justice Thompson delivered the opinion of the Court.

This case comes up on appeal from the Circuit Court of the United States for the District of Ohio. The appellant filed his bill on the

equity side of the Court for an injunction, to enjoin all further proceedings on a judgment recovered against him by the appellees, on the law side of the Court. The judgment was founded upon the same single bill now in question, and is as follows:

"$2,100: Know all men by these presents, we Peter Yarnall & Co., Samuel Sprigg, Richard Simms, Alexander Mitchell, and Z. Jacobs, as principals, are jointly and severally held and firmly bound to the President, Directors, and Company of the Bank of Mount Pleasant, for the use of the Bank of Mount Pleasant, in the just and full sum of twenty-one hundred dollars, lawful money of the United States, to the payment of which said sum, well and truly to be made, to the said President, Directors, and Company, for the use aforesaid, within sixty days from the date hereof, we jointly and severally bind ourselves, our heirs, &c., firmly by these presents, signed with our hands and sealed with our seals, this twentieth day of February, A. D. 1826.

PETER YARNALL & Co., [SEAL.]
SAM. SPRIGG, [SEAL.]
RICHD. SIMMS, [SEAL.]
ALEX. MITCHELL, [SEAL.]
Z. JACOBS, [SEAL.]"

" Signed and delivered in presence of

The judgment at law came before this Court on a writ of error, and is reported in 10 Peters, 257. There were in that case various pleas interposed, setting forth, substantially, that this bill was executed by the obligors, to be discounted at the bank; and that the defendant, Samuel Sprigg, was surety only for Peter Yarnall and Company, who had executed the bill with him; and that the bank had, by renewing or continuing the discount, after the time first limited for the payment of the same, discharged the sureties.

The pleadings in the suit were very voluminous, and terminated in demurrers. The judgment of the Circuit Court was affirmed in this Court; and the decision turned upon the point, that the defendant and all the other obligors had, by the express terms of the obligation, bound themselves as principals, and were thereby estopped from setting themselves up as sureties for Yarnall and Company, and claiming to be discharged by reason of the extended credit given to Yarnall and Company: and the present bill was filed on the equity side of the Court, and relying substantially on the same ground for relief against that judgment. The bill states that Peter Yarnall and Samuel Mitchell were doing business as partners, under the firm of Peter Yarnall and Company; and that the appellees were a banking company, doing business as a bank in the town of Mount Pleasant. That about the 20th of February, in the year 1826, the said Peter Yarnall and Company borrowed from the bank two thousand one hundred dollars, and the single bill now in question was executed, and discounted at the bank in the usual course

of business. That at the time of the loan, the bank knew that Peter Yarnall and Company were the principals, and so received, and accepted, and treated them; and that the other obligors were their sureties, notwithstanding the form of the obligation. That when the said obligation became due, to wit, on the 21st of April, 1826, the bank, on receiving twenty-two dollars and forty cents, paid by Peter Yarnall and Company, for the discount for sixty days, without the knowledge or consent of the sureties, gave a further credit and time of payment for sixty days. That the bank, at each consecutive day of discount and payment of interest in advance, extended the payment of said bill in like manner, until September or October, 1828; until after the failure and insolvency of the said Peter Yarnall and Company, which happened about that time. That between the time the said obligation first became due, and the day when Yarnall and Company failed, the bank, or the said appellant and his co-sureties, could have collected and realized the money secured by the said obligation. And that if the bank had not renewed said loan, and given new and further time of payment, the obligation could have been collected from the said Peter Yarnall and Company. And the bill then charges, that the bank, contriving and intending to impose upon the appellant a loss which has occurred to him in consequence of a confidence and bargain made by themselves with the said Yarnall and Company, and in fraud of the said appellant and his co-sureties; if at the time of bestowing such confidence and making such bargains, it was intended to hold the appellant and his co-sureties liable, and more particularly in fraud of the appellant and his co-sureties, if such confidence and contract with the said Yarnall and Company was, at the time of making the same, a mere personal confidence and contract with the said Yarnall and Company. The bill then sets out the proceedings at law, upon which a judgment has been recovered; and praying a perpetual injunction against further proceedings upon the judgment and execution.

The bank in their answer admit the discount of the single bill; and allege that it was so discounted at the request of the obligors, and the proceeds paid to Alexander Mitchel, one of the obligors. They positively deny having any knowledge of any transaction in relation to said obligation, until it was presented to them for discount; or that they had any knowledge of the relation in which said obligors stood to one another; or that they knew that the proceeds of the obligation was obtained for the exclusive benefit of the said Peter Yarnall and Company; or that they were the principal debtors in said obligations. They deny that they received, accepted, and treated them as the principal debtors; and they aver that the appellant and all the other obligors were principal debtors, and so contracted with and bound themselves to the bank; as will appear by reference to the said single bill. And they further aver, that it was on the faith of this agreement alone, that they discounted the obligation: and that, had not the obligors contracted and bound themselves as principals, let the rela-

tions among themselves be what it might, they would not have discounted the single bill: and that this agreement was made with full knowledge and fair understanding of the fact, and of the purport of the provision in said obligation. And they aver, that the appellant, having bound himself as a principal debtor to the defendants, he is estopped from now alleging that he is only a surety. They deny that they ever gave the said Yarnall and Company the further credit and time of payment as claimed in the bill or otherwise. They admit they used great lenity towards the obligors, in not requiring payment, promptly, when due; but aver that they did so, because they had confidence in the honesty, integrity, and solvency of the obligors, and considering them all as principal debtors. They admit the proceedings at law as set forth in the bill; and deny all manner of unlawful confederacy; and claim the same benefit of this defence, as though they had demurred to the bill. To this answer, there is a general replication: and the cause having been heard upon the bill, answer, replication, exhibits, and testimony; it was adjudged and decreed, that the complainant in the Court below was not entitled to the relief prayed in the bill. Whereupon, the injunction which had been allowed was dissolved, and the bill dismissed.

When this case was before the Court on the writ of error, the effect and operation of the words, "as principals," contained in the single bill discounted at the bank, were fully considered; and it was decided, that they operated as an estoppel, and precluded the defendants from going into evidence to show that he was only surety in the single bill. And unless it shall be found that a different principle prevails in a Court of Equity, the same result must follow upon the present appeal.

It is said, however, on the part of the appellant, that there are no technical estoppels in a Court of Equity. This may be admitted; but it will not affect the present question. For it is equally well settled, as a rule of evidence, in Courts of Equity as well as in Courts of law, that parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement. And this rule is founded on the soundest principles of reason and policy, as well as on authority. This doctrine is fully recognised by this Court in the case of Hunt vs. Rousmanier, 8 Wheat. 211. The Court say: it is a general rule, that an agreement in writing, or an instrument carrying an agreement into execution, shall not be varied by parol testimony, stating conversations or circumstances anterior to the written instrument; that this rule is recognised in Courts of Equity, as well as in Courts of Law. But Courts of Equity grant relief, in cases of fraud and mistake; which cannot be obtained in Courts of Law. In such cases, a Court of Equity may carry the intention of the parties into execution, where the written agreement fails to express that intention. This authority is so directly in point, that it cannot be necessary to refer to any other. But the principle will be found in accordance with the highest authority, both in this coun-

try and in the English Chancery. 1 Johns. C. R. 429. 6 Vesey, 328, and note.

The bill does not charge that the words, " as principals," were inserted in the obligation by mistake, or under any misapprehension, on the part of the appellant, of their import and effect. But on the contrary ; the bill states that the loan was made by the bank to Peter Yarnall and Company, in the usual way of making loans at that bank. From which it is fairly to be inferred, that this obligation was, in form, according to the usage of the bank; with which usage, the obligors must be presumed to have been conusant. Nor is there any direct charge of fraud on the part of the bank; but it seems to be stated, as matter of inference from the allegation, that the loan was for the sole benefit of Yarnall and Company, and that known to the bank. But whatever the charge may be, it is denied in the answer, and is entirely unsupported by the testimony. The charge of fraud rests altogether upon the allegations that the appellant was only a surety in the single bill, and that was known to the bank. All the parol evidence on these points seems to have been admitted ; although objected to, on the part of the bank, as inadmissible, on the ground that it contradicted the written instrument. The ruling of the Court on this objection does not appear upon the record. But if the evidence was admitted, the appellant has no ground of complaint. It was his own evidence. And all that this evidence established, was the simple fact, that the appellant was only surety for Yarnall and Company. But that can have no influence against his direct admission in the obligation, that he was a principal ; and there being no pretence of mistake or surprise, there can be but one meaning attached to this admission ; which is, that as between the obligors and the bank, all were principals, whatever might be their relation between themselves. They had undoubtedly a right to waive their character and legal protection as sureties, and assume the character of principals. This admission in the obligation must have been for some purpose ; and none can be reasonably assigned, except that it was intended to place all the obligors upon the same footing, with respect to their liability to the bank.

The evidence did not support the allegation that the bank had made any agreement to extend the loan or time of payment, other than continuing the discount, in the ordinary course of business at the bank. The form of the obligation dispensed with the necessity of giving any notice to the appellant, even considering him in the character of a surety ; and extending the time of payment, and a mere delay in enforcing it will not discharge a surety, unless some agreement has been made injurious to the interest of the surety ; nothing of which appears to have been done in this case. 9 Wheat. 720. 12 Wheat. 554. The cashier of the bank denies that he ever made any contract with Yarnall and Company, for the extension of the payment of the obligation discounted at the bank, on the 20th of February, 1826, for Peter Yarnall and Company, and others ;

(referring to the single bill in question,) after the same became due, for sixty days, or any other period : but discounted the same according to the custom of the bank; but the time or indulgence given was merely at the will of the bank. That he could not make any contract for the extension of payment, according to the rules of the bank, without an order from the board of directors; and that, on an examination of the minute book, he found no such order; where, if it had been made, it would appear : and the inference attempted to be drawn, that Yarnall and Company were considered and accepted by the bank as the principal debtors, because the account kept at the bank of this loan was in his name alone, was done away, and fully explained by the testimony of the cashier as to the custom of the bank, that the account is always kept with the first signer, unless otherwise especially authorized and directed. But, admitting that the bank knew that Yarnall and Company were the principal debtors, this would not exonerate the other obligors from their responsibility as principals, in violation of their express contract. If Yarnall and Company were of doubtful credit, it might have been the very reason why the bank required all the obligors to bind themselves as principals.

It is no doubt a sound and well-settled principle, that sureties are not to be made responsible beyond their contract; and any agreement with the creditor, which varies essentially the terms of the contract, without the assent of the surety, will discharge him from his responsibility. But this principle cannot apply where the surety has, by his own act, exchanged his character of surety for that of principal; and then applies to a Court of Equity to reinstate him to his character of surety, in violation of his own express contract. This would be sanctioning a fraud upon the creditor. This case has been likened at the bar to that of a deed, absolute in its face, but which, by an independent agreement between the parties, was intended only as a mortgage. Courts of Equity will permit such agreements to be set up against the express terms of the deed, only on the ground of fraud; considering it a fraudulent attempt in the mortgagee, contrary to his own express agreement, to convert a mortgage into an absolute deed. And it is equally a fraud on the part of a debtor, to attempt to convert his contract as principal into that of surety only.

No attempt has been made in the present case to show that the bank had made any agreement with the appellant, that he should be considered and treated as a surety only; contrary to the express terms of his contract to be bound as a principal. If any such agreement had been shown, the analogy to the case put of a mortgage, might hold.

The allegation, that the neglect of the bank to prosecute Yarnall and Company has, by their insolvency, thrown the loss of the debt upon the sureties, might be of some weight if any measures had been taken by them to expedite the collection of the debt from Yarnall and Company, or no longer to continue the discount of the

obligation.    But no such measures appear to have been taken; and their solvency must be at the risk of the sureties, who have, by their express contract, assumed the character of principals.

The decree of the Circuit Court is accordingly affirmed.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Ohio, and was argued by counsel.    On consideration whereof, it is ordered and decreed by this Court, that the decree of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.