**Henry Wurster and Sigmund Wurster, Executors of the Last Will and Testament of Christoph Wurster, Deceased, Appellants, v. Chris A. Albrecht et al., Appellees.**

**Gen. No. 7,418.**

SURETYSHIP—*statutory provision for suit against principal on notice of his insolvency by surety as mandatory.* Under Cahill's St. ch. 132, ¶ 1, entitled "An Act to revise the law relating to sureties," providing for notice by a surety to the holder of a note to sue if the surety apprehends that the maker is or is about to become insolvent, the holder is not required to bring a suit which would be useless because the maker is already insolvent and an instruction in an action against a surety who had served such a notice, which treated the provision of the statute requiring suit by the holder after such notice as being mandatory, was erroneous where it appeared that such a suit would have been unavailing.

Appeal by plaintiffs from the Circuit Court of Jo Daviess county; the Hon. WILLIAM J. EMERSON, Judge, presiding. Heard in this

court at the October term, 1924. Reversed and remanded. Opinion
filed March 27, 1925. Rehearing denied April 28, 1925.

J. C. BOEVERS and SHEEAN & SHEEAN, for appellants.

CHARLES E. STUART, for appellees.

MR. JUSTICE JONES delivered the opinion of the
court.

On February 26, 1917, Chris A. Albrecht, as prin-
cipal, and Mrs. John Albrecht, Jacob Albrecht and
John Haas, as sureties, executed and delivered their
promissory note for $5,000, payable to the order of
Christoph Wurster, one year after date with 5½ per
cent annual interest thereon. The note was not paid
at maturity and on January 24, 1923, the said surety
Jacob Albrecht and the heirs at law of John Haas
(he being dead) caused to be served a written notice
on Wurster, who was still the holder of the note. The
said notice was drawn under the provisions of sec-
tion 1, ch. 132, entitled "An Act to revise the law in
relation to sureties" (Smith-Hurd Rev. St. 1923
[Cahill's St. ch. 132, ¶ 1]). The notice recited that
the sureties apprehend that the maker of the note
"is now or is liable to become insolvent" and it de-
manded that Wurster forthwith sue upon said note.

When Wurster was served with the notice he was
confined to his bed in a hospital at Savanna, Illinois,
and there remained until April 3, 1923, when he died.
No suit was brought on the note during his lifetime
but this suit was instituted by his executors on Octo-
ber 15, 1923. The terms of the circuit court in Jo
Daviess county, where the defendants live, begin as
follows: First Monday in February, fourth Monday
of May and first Monday of November. Wurster died
before the beginning of the May term and the suit
was brought to the November term, it being the next
term of court succeeding the probate of the last will
and testament of Wurster. To the declaration, as

amended, several pleas were filed, but the defense interposed was based upon the third plea, which averred that the sureties were discharged because of the failure of the holder of the note to bring suit as demanded by the above-mentioned notice. This defense was pleaded by the defendant Jacob Albrecht. The suit was dismissed against the heirs of John Haas. A judgment by default was entered against Chris A. Albrecht and Mrs. John Albrecht and a jury was impaneled to try the cause as against Jacob Albrecht. The plaintiffs alone offered evidence. This evidence tended to show that the principal maker of the note, Chris Albrecht, was insolvent on the day the notice was served; that he had so remained ever since, and that there were unsatisfied judgments of record against him upon which executions had been issued and returned by the sheriff "no property found." He testified that at all times since January 8, 1923, he had no money with which to pay his debts and that he was not possessed of any property. There is, however, testimony showing that sometime previous to said last-mentioned date he transferred some property to his wife to whom he claimed he was indebted. But taking the evidence as a whole, there can be no escape from the conclusion that it tended to support the contention of appellants that Chris Albrecht was insolvent at all times after the notice was given.

On behalf of the defendant the court gave the following instruction: "The Court instructs the jury that if you believe from a preponderance of all the evidence in this case that the defendant, Jacob Albrecht, was a surety, only, on the promissory note sued on in this case, and, that said Jacob Albrecht, believing the principal maker of said note was likely to become insolvent without discharging the said note, did, after said note became due, require, by writing, Christoph Wurster, the holder of said note, to forthwith sue upon said note, then, unless you further believe from a preponderance of all the evidence in this

case, that said Christoph Wurster, or his personal representatives, did within a reasonable time after the service of said notice in writing, and with due diligence, commence suit on said note, and prosecute the same to final judgment and execution, then you should find the issues in this case for said defendant, Jacob Albrecht.''

The jury returned a verdict in favor of the defendant upon which judgment was rendered. This cause comes here by appeal and it is contended by appellants that the court committed reversible error in giving the foregoing and certain other instructions. They claim that the legislature did not intend, by the above-mentioned statute, to compel the bringing of a suit against a principal, when it would be wholly unavailing because of his insolvency. They also insist that the notice was informal and insufficient because it recites that the principal maker ''is *now* insolvent,'' while the statute authorizes the giving of such notice only in cases where the surety apprehends that his principal is likely to become insolvent.

The said statute was passed in 1874, but counsel for the respective parties assert that neither the Supreme Court nor the Appellate Courts of this State have heretofore been called upon to decide the question here involved, and in our search we have been unable to find any Illinois case in point. We have been referred to the decision of courts of other States, but these decisions differ according to the varying language employed in the several State statutes. No case has been cited which is based upon a statute altogether like ours.

If there were no statutory provision requiring the holder of a note to institute a suit upon the demand of a surety, the holder would be under no obligation whatever to comply with the demand of a surety to sue. Our statute was undoubtedly enacted for the purpose of compelling diligence by a creditor to the end that a surety may be protected against loss. It

is difficult to conceive of any other purpose for the statute. If the principal debtor is about to become insolvent or is about to remove from the State without discharging his contract, then of course the creditor, upon notice, ought to be compelled to institute suit in order to keep the surety harmless; but if the principal maker is already insolvent or has already removed from the State, then a suit against him by the creditor would be of no benefit to the surety. The law will not require one to do a useless thing and no reason can be seen which would compel a creditor to institute a suit in protection of a surety when it is evident that such suit could afford no protection.

Under section 1 of the Negotiable Instruments Act [Cahill's St. ch. 98, ¶ 5], the assignor of a note is made liable to the assignee thereof, provided, the assignee has used due diligence by the institution and prosecution of a suit against the maker thereof. But, if the institution of such suit would have been unavailing, the prosecution of a suit against the maker is made unnecessary. The Supreme Court of this State in *Springer v. Puttkamer*, 159 Ill. 567, held that the insolvency of the principal excused the bringing of a suit under that section. It is a general rule that where a statute requires the bringing of a suit under certain circumstances such requirement is obviated by showing that the suit, if brought, would be ineffective. As illustrative of this point, it is said in 8 Corpus Juris 458 that in many of the statutes requiring the holder of a note or other paper to use due diligence to collect the same from the maker in order to render an assignor, indorser or drawer liable, it is expressly provided that suit is not necessary if there is sufficient excuse for not bringing it, and then the text adds very significantly that "even where there is no such provision it would seem clear that it should be implied." And again on page 460 of the same volume it is said that even in the absence of an express statutory provision the insolvency of a maker of a note will excuse

the bringing of a suit against him in order to charge an indorser or an assignor.

The instruction in this case treats the statute as being mandatory and without any exceptions implied or otherwise. We do not believe that such an interpretation should be given to it. If the principal maker was insolvent, as the evidence tended to show he was, then a suit against him would have been unavailing, and this situation would excuse the holder of the note from instituting a useless action and his failure to sue will not discharge the sureties. There was at least one other instruction given on behalf of the defendant which is subject to the objections we have pointed out, and it too should not have been given.

Because of the error contained in said instructions, the judgment in this case is reversed and the cause remanded.

*Reversed and remanded.*