Dolores R. MIRANDA, et al., Libellants,

v.

CITY OF GALVESTON, Texas, et al.,
Respondents.

No. 1909.

United States District Court
S. D. Texas, Galveston Division.

July 21, 1954.

Armstrong, Bedford & Lambdin (Griffith D. Lambdin), and Barker & Barker (Owen D. Barker), Galveston, Tex., and Burris, Benton, Baker & Zwiener (F. F. Benton), Houston, Tex., for libellants.

Williams & Thornton (Bryan F. Williams), Galveston, Tex., for respondent City of Galveston.

Royston & Rayzor (M. L. Cook), Galveston, Tex., for respondent Texas Employers' Ins. Assn.

KENNERLY, Chief Judge.

This is a suit against the City of Galveston, Texas, owner and operator of Elevator B in Galveston, by libellants for damages for bodily injuries, and by the Texas Employers' Insurance Association (for brevity called Texas Employers) for reimbursement for compensation, etc. paid libellants on account of such bodily injuries, under the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S.C.A. § 901 et seq. The Decree entered herein on April 14, 1952, in favor of libellants and Texas Employers, was affirmed by the Court of Appeals, 5 Cir., 205 F.2d 468, 470, 471. In the Opinion and the Mandate of the Court of Appeals, this Court is given substantially the following direction:

"The judgment appealed from is therefore affirmed and the cause is remanded with directions to the district judge, to proceed with the motion of Texas Employers to ascertain the amounts due the association under and by the terms of the decree and the settlements made between the City and the libellants, and to render judgment therefor in favor

of Texas Employers accordingly. All costs of the appeal are taxed against the City."

This is a hearing in accordance with such direction, and Texas Employers is here, setting forth the amounts paid by it, plus interest, and *also claiming attorneys' fees.** The amount paid by Texas Employers as compensation, etc. is stipulated by all parties to be $51,130.14, which it is agreed shall bear interest at the rate of 6% per annum from February 5, 1953. But libellants, the City, and their Attorneys *combat Texas Employers' claim for attorneys' fees.*

The facts shown by the Record are substantially as follows:

(a) The City of Galveston was at the time of and before the filing of this suit, and has been since, the owner and operator of Grain Elevator B in that City. On or about August 7, 1949, a cargo of grain from Elevator B was unloaded into Holds 2 and 4 of the Steamship "Lipscomb Lykes." Libellants, Dolores R. Miranda and approximately 140 other persons who were longshoremen, etc. in the employ of the Southern Stevedoring Company, Inc. (for brevity called Stevedoring Company), suffered bodily injuries and became ill while trimming the grain in such Holds of such Steamship. They claimed that such injuries, illness, etc. were caused by "Weevilcide", a noxious and poisonous fumigant placed in said grain by the City.

(b) This suit in admiralty was filed by libellants against the City of Galveston, seeking to recover damages for such bodily injuries. The Texas Employers, as the carrier of Stevedoring Company under such Act, was brought into the suit by libellants,[1] filed appropriate pleadings, and joined with libellants in the prosecution of this suit.

(c) By Stipulation, the question of liability was first heard, and on April 14, 1952, Judgment was entered in favor of libellants against the City of Galveston, fixing its liability to libellants for such sums of money as should thereafter be ascertained and fixed as their damages, etc. Such Judgment also provided for recovery of compensation, etc. by Texas Employers', as shown in the margin.[2]

(d) The City of Galveston appealed to the Court of Appeals, and pending such appeal, the City, without the consent of Texas Employers', agreed to settle and did settle with libellants, paid them the amount of damages agreed upon, took releases from them, and dismissed its appeal against them. City also agreed in an Indemnity Agreement, dated February 5, 1953, to indemnify and save harmless each libellant and his Attorney against any recovery against him by Texas Employers'.[3]

---

* Texas Employers' also claims certain expenses alleged to have been incurred by it and its attorneys. The reference herein to attorneys' fees includes such expenses.

1. Paragraph XXV of the Original Libel is as follows:

"That as compensation insurer of libellants' employer, respondent, Texas Employers' Insurance Association, has heretofore made certain weekly compensation payments and furnished certain hospitalization benefits to the libellants because of their injuries aforesaid while so employed, pursuant to the provisions of the Longshoremen's and Harbor Workers' Act; Texas Employers' Insurance Association is made respondent herein in order that it may assert herein whatever interest, if any, it may have."

2. "It is further ordered, adjudged and decreed that respondent, Texas Employers' Insurance Association, is entitled to recover out of the amount, if any, which may be awarded and adjudged to be due by respondent, City of Galveston, to each libellant, the sum of the compensation paid to such libellant, and of the medical, doctors' and hospital expenses reasonably incurred for treatment of such libellant and any other amounts, if any, to which Texas Employers' Insurance Association may be entitled under the terms and provisions of the Longshoremen's & Harbor Workers' Compensation Act 33 U.S.C.A., Sec. 901, et seq., an adjudication as to the amount or amounts, if any, to which said respondent may be entitled to await further judgment of this Court."

3. The relevant portion of such Agreement is as follows:

"The Board of Trustees of the Galveston Wharves and its successors will indemnify and save harmless each of such

(e) Thereupon, Texas Employers' took appropriate action in this Court and in the Court of Appeals, and the case was disposed of in the Court of Appeals, as stated, and with direction, as stated.

■ 1: We have for decision only the question of whether Texas Employers' is entitled to recover attorneys' fees, and if so, the amount thereof.

Citing the cases shown in the margin,[4] City says in its brief:

"In Federal Courts, in neither actions in Admiralty nor suits at law are attorney's fees, except statutory docket fees, of the prevailing party, taxable as costs against the opposing party, unless expressly allowed by Statute."

This point may be quickly disposed of. There is no contention here that City is liable for attorneys' fees in addition to damages except insofar as it has—if it has—made itself liable by and under the Indemnity Agreement mentioned.

■ 2: In deciding as to Texas Employers' claim for attorneys' fees, the question to be first determined is what were the rights of the parties, and particularly the Texas Employers', under such Judgment. True, there was an appeal by City, a settlement by City with libellants, and the proceedings in the Court of Appeals shown by the Opinion, 205 F.2d 468, but Texas Employers' was not thereby deprived of any right. If it had the right to have and recover attorneys' fees under the Judgment, it still has such right.

As has been pointed out, libellants brought Texas Employers' into this suit, and Texas Employers' joined libellants in the effort to recover damages from City. Each was represented by counsel. Information obtained by each in prior investigations and litigation[5] was used at the trial. I am sure that it is true that each litigant and his attorney made a faithful and earnest effort to succeed in the litigation and to recover the judgment which they did recover.

Section 933 of the Act[6] may in part but does not wholly cover this litigation. This suit was not brought by libellants

---

attorneys and their legal representatives and each of such libellants in that action against each and every claim or demand asserted by Texas Employers' Insurance Association, Southern Stevedoring Company, Inc., or Lykes Bros. Steamship Company, Inc., or any of them, against him or his heirs, executor, or administrator for the amount of money, or any part thereof, paid to him, or his attorneys, by the Board of Trustees of the Galveston Wharves in satisfaction of, and for the release of, his claims for injuries suffered aboard the S.S. Lipscomb Lykes, on or about August 8, 1949, at the Port of Galveston."

4. The Baltimore, 8 Wall. 377, 75 U.S. 377, 19 L.Ed. 463; Pero v. United States, D.C., 64 F.Supp. 485; Daniel F. Young, Inc., v. United States, D.C., 55 F.Supp. 24; Rude v. Buchhalter, 286 U.S. 451, 52 S.Ct. 605, 76 L.Ed. 1221; Kansas City Southern Ry. Co. v. Guardian Trust Co., 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659; Department of Highways v. McWilliams Dredging Co., 5 Cir., 187 F.2d 61, affirming ruling of District Court, 10 F.R.D. 107; Maryland Casualty Co. v. United States, to Use of Heyward, 4 Cir., 108. F.2d 784; Gold Dust Corporation v. Hoffenberg, 2 Cir., 87 F.2d 451; Ballard

v. Spruill, 64 App.D.C. 60, 74 F.2d 464.

5. There was previous litigation between other persons and the City. Hill v. City of Galveston, Tex.Civ.App., 241 S.W.2d 229; City of Galveston v. Hill, 151 Tex. 139, 246 S.W.2d 860, 862.

6. Section 933 of the Act is as follows:

"Compensation for injuries where third persons are liable. (a) If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer is liable in damages, he may elect, by giving notice to the deputy commissioner in such manner as the Secretary may provide, to receive such compensation or to recover damages against such third person.

"(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person.

"(c) The payment of such compensation into the fund established in section 944 of this chapter shall operate as an assignment to the employer of all right

strictly under Section 933(a), (b), (c), (f) and (g). There was no notice to the Deputy Commissioner of libellants' elec-tion either to receive compensation from Texas Employers' or to recover dam-ages from City. This suit was not brought by Texas Employers' strictly under Section 933(d), (e) and (f). Al-though the cause of action against City was vested in libellants for themselves and for the benefit of Texas Employers', this suit was a joint, voluntary and co-operative effort by both libellants and Texas Employers' to recover damages from the City, the question of the allo-cation or application of the damages so recovered to be determined, if not agreed to, by the Court.

It is perfectly plain that had the case not been settled by libellants and City, but had proceeded to final judgment, that after the amount of damages recov-erable against the City had been deter-mined and fixed, this Court would have fixed the amount of recovery of each. That applying the principles of equity, and so far as practicable the provisions of Section 933, this Court would have made allocation or application of such damages. That after ordering first paid the expenses incurred by libellants and Texas Employers', including attorneys' fees for both sets of attorneys, then the Court would have made a fair and equi-table adjustment between libellants and Texas Employers', taking into considera-

of the legal representative of the de-ceased (hereinafter referred to as 'rep-resentative') to recover damages against such third person, whether or not the representative has notified the deputy commissioner of his election.

"(d) Such employer on account of such assignment may either institute pro-ceedings for the recovery of such damag-es or may compromise with such third person either without or after institut-ing such proceeding.

"(e) Any amount recovered by such employer on account of such assignment, whether or not as the result of a com-promise, shall be distributed as follows:

"(1) The employer shall retain an amount equal to—

"(A) the expenses incurred by him in respect to such proceedings or compro-mise (including a reasonable attorney's fee as determined by the deputy commis-sioner);

"(B) the cost of all benefits actually furnished by him to the employee under section 907;

"(C) all amounts paid as compensa-tion;

"(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accord-ance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be fur-nished under section 907 of this title, to be estimated by the deputy commission-er, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the per-

son entitled to compensation or to the representative; and

"(2) The employer shall pay any excess to the person entitled to compensation or to the representative.

"(f) If the person entitled to compen-sation or the representative elects to re-cover damages against such third person and notifies the Secretary of his election and institutes proceedings within the period prescribed in section 913 of this chapter, the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is pay-able on account of such injury or death over the amount recovered against such third person.

"(g) If a compromise with such third person is made by the person entitled to compensation or such representative of an amount less than the compensation to which such person or representative would be entitled to under this chapter, the employer shall be liable for compen-sation as determined in subdivision (e) of this section only if such compromise is made with his written approval.

"(h) The deputy commissioner may, if the person entitled to compensation un-der this chapter is a minor, make any election required under subdivision (a) of this section, or may authorize the parent or guardian of the minor to make such election.

"(i) Where the employer is insured and the insurance carrier has assumed the payment of the compensation, the insur-ance carrier shall be subrogated to all the rights of the employer under this sec-tion."

tion the amount of damages recovered and the amount of compensation paid by Texas Employers'.

It was an equitable adjustment of this kind that was made in The Etna, 3 Cir., 138 F.2d 37. Mitchell, the employee, purporting to move under Section 933, proceeded alone against a third person and recovered damages. He refused to recognize his employer's claim for reimbursement for compensation paid him, and it was held in effect that equity would require him to do so. There is nothing contrary to this view to be found in the two cases which City cites. Jarka Corporation v. Monahan, 1 Cir., 62 F.2d 588; Marlin v. Cardillo, 68 App.D.C., 201, 95 F.2d 112.

But this case was settled. Such settlement was apparently a most advantageous one. Libellants recovered and collected damages sufficient to pay themselves and their attorneys.[7] In addition, both libellants and City apparently recognized that Texas Employers' was entitled, or might be held entitled, to some part of the damages agreed upon, and City executed the Indemnity Agreement hereinbefore referred to and quoted in part.

Libellants and City concede that Texas Employers' is entitled to have and recover the compensation, medical expenses, etc. actually paid by it, together with interest, but no more. If it recover no more, the libellants will have their apparently liberal damages, out of which their attorneys were apparently fairly paid for their services, but their partner in the suit, Texas Employers', will not fare so well. It will have to pay its attorneys out of the amounts recovered by it to reimburse it for compensation, etc. paid by it, thus sustaining a clear loss. This would be neither in accordance with the letter nor the spirit of Section 933, nor with the principles of equity. This view finds support not only in The Etna, supra, but in Fontana v. Pennsylvania R. Co., D.C.S.D.N.Y., 106 F.Supp. 461. Fontana, the employee, recovered damages from a third person, and the Court held, following the equitable rule laid down in The Etna, that Huron, the employer, was entitled to reimbursement out of such damages for compensation paid Fontana, ahead of expenses, including attorneys' fees incurred by Fontana in collecting such damages. It was also held that it did not matter whether the damages were collected in a suit brought by the employee or the employer.

The view that Texas Employers' is entitled to attorneys' fees is strengthened by decisions of the Texas Courts on a similar question which arose under a Texas statute recognizing the equitable doctrine of subrogation.[8] Traders &

---

7. According to the form of a release attached to libellants' Answer to the Motion of Texas Employers', at least one of the 140 libellants recovered $1171.71, of which such libellant received $700 and his attorneys $471.71.

8. Article 8307, Section 6a, of Vernon's Ann.Civ.St.Texas, is as follows:

"Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employe may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. If compensation be claimed under this law by the injured employe or his legal beneficiaries, then the association shall be subrogated to the rights of the injured employe in so far as may be necessary and may enforce in the name of the injured employe or of his legal beneficiaries or in its own name and for the joint use and benefit of said employe or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employe or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employe or his beneficiaries. The associa-

General Ins. Co. v. West Texas Utilities Co., 140 Tex. 57, 165 S.W.2d 713; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853; Fort Worth Lloyds v. Haygood, 151 Tex. 149, 246 S.W.2d 865.

My conclusion is that Texas Employers' is entitled to have and recover a reasonable attorneys' fee in this matter.

3: Giving consideration to all the evidence, including typewritten summary of services rendered by attorneys for Texas Employers' and statement of expenses incurred, I have reached the conclusion that such attorney's fees should be $10,000, this amount, however, to include all expenses of every kind and character incurred by Texas Employers'. This $10,000 is in addition to the $51,130.14 and interest thereon stipulated by the parties hereinbefore set forth.

From what has been said, it follows that Judgment for Texas Employers' should be and is rendered accordingly. Let appropriate Decree be drawn and presented.

tion shall not have the right to adjust or compromise such liability against such third person without notice to the injured.

employe or his beneficiaries and the approval of the board, upon a hearing thereof."